UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY N.,

                              Plaintiff,                          **DECISION
                                                                  and
                    v.                                            ORDER**

LELAND DUDEK,[1] Acting Commissioner of                          **22-CV-370F**
  Social Security,                                                **(consent)**

                              Defendant.
_____

APPEARANCES:         HILLER COMERFORD INJURY & DISABILITY LAW PLLC
                     Attorneys for Plaintiff
                     IDA M. COMERFORD,
                     KENNETH R. HILLER, and
                     MARY ELLEN GILL, of Counsel
                     6000 North Bailey Avenue
                     Suite 1A
                     Amherst, New York  14226

                     TRINI E. ROSS
                     UNITED STATES ATTORNEY
                     Attorney for Defendant
                     Federal Centre
                     138 Delaware Avenue
                     Buffalo, New York  14202
                            and
                     MICHAEL P. CORONA
                     Special Assistant United States Attorney, of Counsel
                     Social Security Administration
                     Office of General Counsel
                     6401 Security Boulevard
                     Baltimore, Maryland  21235

## JURISDICTION

On October 1, 2024, the parties to this action consented pursuant to 28 U.S.C.

---

[1] Leland Dudek became the Acting Commissioner of the Social Security Administration on February 16, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

§ 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order.  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on November 14, 2022 (Dkt. 10), and by Defendant on January 5, 2023 (Dkt. 11).

## BACKGROUND

Plaintiff Anthony N. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications ("applications") filed with the Social Security Administration ("SSA") on March 25, 2019, for Social Security Disability Income ("SSDI") under Title II of the Act, AR[2] at 282-83, and on October 3, 2019, for Supplemental Security Income ("SSI") under Title XVI of the Act, AR at 284-90 (together, "disability benefits").  Plaintiff alleges he became disabled on February 1, 2015, based on insomnia, depression, bipolar disorder, heart failure diagnosed in 2015, learning disability, dyslexia, neuropathy in hands and arms, hernia, and dizziness.  AR at 282, 284, 344, 349.  Plaintiff's application initially was denied on February 25, 2020.  AR at 179-98.

Plaintiff timely filed a request for reconsideration, AR at 199-200, which was denied on May 6, 2020.  AR at 201-12 (SSDI), and 249-60 (SSI).  On May 13, 2020, Plaintiff requested an administrative hearing before an administrative law judge with the SSA ("ALJ"), AR at 213-14, which was granted with the administrative hearing held by telephone conference on December 16, 2020, before ALJ Thomas Gray ("the ALJ"),

---

[2] References to "AR" are to the Bates-numbered pages of the Administrative Record electronically filed by Defendant in two parts on August 11, 2022 (Dkts. 6 and 7).

located in New York, New York ("the administrative hearing" or "the hearing").  AR at

29-59 (repeated at 65-96).[3]  Appearing and testifying by telephone at the hearing were

Plaintiff, represented by legal counsel Samantha Ventura, Esq., along with an impartial

vocational expert ("VE") Kenneth Smith ("the VE").

On May 4, 2021, the ALJ issued a decision denying Plaintiff's claim, AR at 7-28

("the ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council

("administrative appeal").  AR at 279-81.  On March 18, 2022, the Appeals Council

denied Plaintiff's request for review, AR at 1-6, rendering the ALJ's Decision the

Commissioner's final decision on Plaintiff's disability benefits applications.  On May 17,

2022, Plaintiff commenced the instant action seeking review of the ALJ's Decision

denying Plaintiff disability benefits.

On November 14, 2022, Plaintiff moved for judgment on the pleadings (Dkt. 10)

("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion

for Judgment on the Pleadings (Dkt. 10-1) ("Plaintiff's Memorandum").  On January 5,

2023, Defendant moved for judgment on the pleadings (Dkt. 11) ("Defendant's Motion"),

attaching the Memorandum of Law in Support of the Acting Commissioner's Motion for

Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule

5.5 (Dkt. 11-1) ("Defendant's Memorandum").  On January 26, 2023, Plaintiff filed

Plaintiff's Reply to Commissioner's Memorandum in Support (Dkt. 12), advising that

upon reviewing Defendant's Memorandum, "Plaintiff deems no reply necessary because

---

[3] For unexplained reasons, two copies of the transcript of the ALJ hearing ("hearing transcript") are in the administrative record.  Further, the first copy of the hearing transcript is erroneously denoted in the Court Transcript Index as dated December 7, 2021.  *See* Dkt. 6 at 2.  The two copies of the hearing transcript are printed using different fonts, resulting in a slight variation in pagination between the two.  In the interest of clarity and judicial economy, references to the hearing transcript are to the first copy.

any reply would simply duplicate arguments made in the original brief . . . ."  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.


## FACTS[4]

Plaintiff Anthony N. ("Plaintiff"), born August 2, 1977, was 37 years old as of his alleged disability onset date ("DOD") of February 1, 2015, and 43 years old as of May 4, 2021, the date of the ALJ's Decision.  AR at 10, 22, 282, 284.  As of the administrative hearing, Plaintiff lived with his girlfriend and two children including their one-year old son in common, and his girlfriend's three-year old daughter.  AR at 35, 347, 360, 1788-89.  They lived in a double home owned by Plaintiff's parents who lived on the other side of the double home with Plaintiff's two older children, ages 8 and 5, from a previous relationship.  *Id*. at 1788-89.

Plaintiff graduated high school where he was in regular classes but attended special education classes in grades 6 through 8.  AR at 348.  Plaintiff has not completed specialized job training, trade, or vocational school.  *Id*.  Plaintiff has a driver's license and can drive.  AR at 363.  Plaintiff's past relevant work ("PRW"), includes as a cellular phone sales person, sales representative of television and cable services, and an alarm installer, and occasionally worked as an Uber driver.  AR at 350, 374-78.

It is undisputed that Plaintiff has a history of intravenous heroin drug use for nine months which caused aortic valve and mitral valve endocarditis resulting in heart failure

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

based on severe aortic regurgitation and severe mitral regurgitation.  AR at 1275, 1764, 1789.  To treat these heart conditions, on July 21, 2015, Plaintiff underwent open-heart surgery performed by cardiothoracic surgeon Steven W. Downing, M.D. ("Dr. Downing"), at Mercy Hospital in Buffalo, New York, receiving a pericardial valve and a replacement cardiovascular valve.  *Id*. at 1275-76, 1279-81, 1764.  Plaintiff has not used heroin for five years, since May 2015, has been compliant with methadone treatment, and currently uses only medical marijuana prescribed for neuropathy.  *Id*. at 1617, 1652, 1656, 1696, 1736-42, 1789.

From May 9, 2017 to June 21, 2019, Plaintiff was treated by neurologist George C. Kalonaros, M.D. ("Dr. Kalonaros"), with Sheridan Drive Medical Group for neck pain and numbness and tingling in his hands.  AR at 1566-1615.  On June 30, 2017, Plaintiff was treated in the emergency room at Kenmore Mercy Hospital, Kenmore, New York, for a right thumb laceration.  AR at 648-56.  From March 16, 2020 to July 30, 2020, Plaintiff was treated for carpal tunnel syndrome by Paul D. Paterson, M.D. ("Dr. Paterson") of General Physician PC, Orthopedics, Hand & Upper Extremity ("General Physician Orthopedics").  AR at 1641-43, 1648-55.  From January 16, 2020 to October 28, 2020, Plaintiff was treated at Dent Neurologic Institute ("Dent"), by neurologist Lixin Zhang, M.D. ("Dr. Zhang") for complaints of dizziness, primary insomnia, and seizure-like activity.  AR at 1458-76, 1768-86.

On March 17, 2020, Plaintiff underwent bilateral carpal tunnel release ("CTR") surgery performed by Dr. Paterson at Erie County Medical Center ("ECMC").  AR at 1619-20.  Plaintiff obtained primary care at Northtowns Medical Group, P.C., where his primary care physician ("PCP") was Donald Gullickson, D.O. ("Dr. Gullickson").  AR at

1490-1531, 1630-77.  For his mental impairments, which were largely associated with Plaintiff's substance abuse, Plaintiff was treated at Horizon Health Services ("Horizon Health").  AR at 720-1233.  Plaintiff also attended group and individual psychotherapy from May through November 2020 at Buffalo Methadone where his substance abuse counselor was Luis Acevedo, and through which Plaintiff also received a daily dose of methadone.  AR at 1687-1756.

On December 3, 2020, Plaintiff underwent a psychiatric evaluation by psychiatrist Wendy L. Weinstein, M.D. ("Dr. Weinstein").[5]  AR at 1787-91.  Dr. Weinstein's mental status examination was remarkable only for Plaintiff's self-reported auditory hallucinations, and Dr. Weinstein's diagnosis was bipolar I disorder.  AR at 1790.

 In connection with his disability benefits application, on January 30, 2020, Plaintiff underwent a psychiatric evaluation by consultative psychologist Susan Santarpia, Ph.D. ("Dr. Santarpia").  AR at 1478-82 ("Dr. Santarpia's opinion").  Dr. Santarpia's mental status examination was largely unremarkable with insight and judgment rated as "fair."  AR at 1479-81.  Dr. Santarpia diagnosed Plaintiff with unspecified bipolar and related disorder by history, opioid dependence abuse in sustained remission, and borderline diabetes per Plaintiff's report.  *Id*. at 1481. Dr. Santarpia's medical source statement included no work restrictions based on any psychiatric problems which Dr. Santarpia did "not appear to be significant enough to interfere with the claimant's ability to function on a daily basis."  *Id*.

---

[5] It is not clear from the record whether Dr. Weinstein is connected to any treatment facility or organization, nor does the record indicate that Plaintiff had a treatment history with Dr. Weinstein; rather, Dr. Weinstein reported that Plaintiff was referred to her by Plaintiff's own mother.  AR at 1788.

Also on January 30, 2020, Plaintiff underwent an internal medicine examination by consultative physician Hongbiao Liu, M.D. ("Dr. Liu"), whose physical examination was essentially normal.  AR at 1484-88 ("Dr. Liu's opinion").  Dr. Liu's diagnoses included that Plaintiff had histories of neuropathy status post right wrist surgery, hernia status post surgery, congestive heart failure status post aortic valve and mitral valve repair, dizziness, and heroin abuse.  *Id*. at 1487.  Plaintiff's prognosis was "stable," and Dr. Liu's medical source statement included that Plaintiff "should avoid moderate exertional activities due to the cardiac condition . . . . [and] should avoid heights and heavy machine operation due to the dizziness."  *Id*. at 1487.

 Plaintiff's medical records were reviewed on February 24, 2020, by State Agency review psychologist J. May, Ph.D. ("Dr. May"), who concluded Plaintiff's psychiatric impairments in combination, including depressive, bipolar, and related disorders, and anxiety and obsessive-compulsive disorders, were nonsevere.  AR at 104, 106.  Dr. May's conclusion was affirmed by State Agency review psychologist L. Dekeon, Ph.D. ("Dr. Dekeon") upon reconsideration on May 5, 2020.  AR at 143, 145.

**DISCUSSION**

1.    **Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's

determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[6] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if

---

[6] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.[7]  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the

---

[7] Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title II, 42 U.S.C. § 423(d), and Title XVI, 42 U.S.C. § 1382c(a)(3), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

Commissioner must then consider the applicant's residual functional capacity ("RFC") which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

3.    **Analysis of Plaintiff's Arguments**

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement for SSDI through September 30, 2021, and has not engaged in substantial gainful activity ("SGA") since February 1, 2015, Plaintiff's asserted disability onset date ("DOD").  AR at 12-13.  The ALJ found Plaintiff suffers from the severe impairments of

nonrheumatic aortic valve disorder, other nonrheumatic mitral valve disorders/status-post open heart valve replacement surgery, obstructive sleep apnea, carpal tunnel syndrome/status-post carpal tunnel release surgery, right DeQuervain's tenosynovitis (painful condition affecting the tendons on the thumb side of the wrist), and obesity, *id*. at 13, but that Plaintiff's transient blurred vision, vertigo, history of thumb laceration, and opioid dependence in sustained remission, do not pose more than a minimal effect on Plaintiff's ability to perform physical or work activities and, as such, are not severe impairments.  AR at 13.  The ALJ further considered Plaintiff's medically determinable mental impairments of bipolar II disorder, auditory hallucinations, insomnia, and anxiety disorder with depression, considered singly and in combination, do not cause more than minimal limitation in Plaintiff's ability to perform basic work activities and therefore are nonsevere, AR at 13-16, and that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 16.  The ALJ found that despite Plaintiff's impairments, Plaintiff retains the RFC to perform sedentary work as defined by 20 C.F.R. § 404.1567(a) and § 416.967(a), that does not expose Plaintiff to smoke, dust, or any other respiratory irritant, and no more than frequent reaching, handling, fingering, and feeling.  *Id*. at 17-20.  The ALJ further found Plaintiff is incapable of performing any PRW, *id*. at 20, but that Plaintiff, based on his age which was considered a younger individual, 20 C.F.R. § 404.1563 and § 416.963, high school education, work experience with transferability of skills not relevant, and RFC, can perform jobs existing in significant numbers in the national economy including as a document preparer, addresser, and inspector – touch up screener.  AR at 20-21.

Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act from February 1, 2015, the asserted DOD, through the date of the ALJ's Decision. *Id*. at 22.

In support of his motion, Plaintiff argues the ALJ erred by improperly relying on stale opinion evidence, rendered prior to Plaintiff's CTR surgery, in formulating the handling and fingering limitations included in the RFC, Plaintiff's Memorandum at 9-12, and failing to incorporate any mental limitations into the RFC despite finding mild limitations in all four areas of mental functioning when applying the so-called "special technique." *Id*. at 12.  In response, Defendant argues that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record, Defendant's Memorandum at 6-20, and the ALJ was not required to include any mental limitations in the RFC, *id*. at 20-23.  There is no merit to Plaintiff's arguments.[8]

### A.    Mental Health Impairment

Initially, the court addresses Plaintiff's argument, Plaintiff's Memorandum at 12, that the ALJ improperly applied the "special technique" for evaluating mental impairments by failing to include any mental limitations in the RFC.  In opposition, Defendant argues that because the ALJ found Plaintiff with only mild limitations in all four areas of mental functioning, and ultimately concluding that Plaintiff's mental impairments were not severe, the ALJ was not required to incorporate any mental limitations into the RFC.  Defendant's Memorandum at 20-21.  Defendant further maintains the ALJ's determination that Plaintiff's mental impairments caused only mild limitations to Plaintiff's areas of mental functioning is supported by substantial evidence in the record including Dr. Santarpia's opinion and the prior administrative medical

---

[8] Plaintiff does not argue the ALJ erred in formulating Plaintiff's RFC with regard to Plaintiff's heart impairment, dizziness, or sleep disorder.

findings of Drs. May and Dekeon, as well as an evaluation by Dr. Weinstein. *Id*. at 21-22. Defendant further maintains that the ALJ accommodated Plaintiff's "mild limitations" to his mental capacity by limiting Plaintiff to unskilled work. *Id*. at 22-23.

Regarding Plaintiff's argument that the ALJ improperly failed to include any mental limitations in the RFC as required by the "special technique," the "special technique," also referred to as the "psychiatric review technique," is to be followed at each level of the administrative review process when evaluating mental impairments. 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. 416.920a(c)(3). Application of the special technique requires consideration and evaluation of the claimant's ability to function in "four broad functional areas. . . ." 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. 416.920a(c)(3). The four areas include "[1] [u]nderstand, remember or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage oneself." *Id*. For each of these for areas, the claimant's degree of limitation is rated on a "five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4); 20 C.F.R. § 416.920a(c)(4). A rating of "extreme" "represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id*. After rating the degree of functional limitation caused by mental impairments, the severity of the mental impairments is determined. 20 C.F.R. § 404.1520a(d); 20 C.F.R. § 416.920a(d). If the degrees of functional limitations in all four functional areas are rated "as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *Id*. Accordingly, the ALJ's determination that Plaintiff's mental impairments were nonsevere because

Plaintiff had no more than mild limitations in any functional areas was proper.  *Id*.  *See also Whipple v. Astrue*, 479 Fed.Appx. 367, 369 (2d Cir. 2012) ("The regulations make clear that those factors are only to be applied in determining the severity of a mental impairment, the third step prescribed by the disability evaluation guidelines, not a claimant's RFC, which is relevant to the guidelines' fourth and fifth steps." (citing 20 C.F.R. § 404.1520a(d))); *Lynette W. v. Comm'r of Soc. Sec.*, 2021 WL 868625, at * 4 (W.D.N.Y. Mar. 9, 2021) ("an examiner's opinion that a claimant has a 'mild' limitation in an area is 'consistent with [a] finding of nonseverity.'" (quoting *Wilkins v. Comm'r of Soc. Sec.*, 2019 WL 2500500, at *5 (W.D.N.Y. June 17, 2019))) (brackets in *Lynette W.*). "By the same token, 'mild limitations' do not necessarily 'require the addition of mental limitations in the RFC.'"  *Lynette W.*, 2021 WL 868625, at * 4 (quoting *Jane M.A. v. Comm'r of Soc. Sec.*, 2021 WL 63066, at *5 (W.D.N.Y. Jan. 7, 2021)).

The ALJ's determination that Plaintiff's mental impairment posed only mild limitations in the four functional areas is also supported by substantial evidence in the record.  In particular, voluminous treatment notes from Horizon Health demonstrate that Plaintiff was being treated for substance abuse disorder and mental status examinations were essentially unremarkable.  *See*, *e.g.*, 1715 (Plaintiff reported on June 18, 2020 feeling relaxed and being independent and a better parent).   The ALJ further observed that Plaintiff "reported hobbies reflecting a higher level of mental functioning, including hobbies of photography and making YouTube instruction videos teaching photography to viewers."  *Id*. at 14 (citing AR at 725-1233, and 1686-1756), *see* AR at 1706 (Plaintiff reporting on July 23, 2020 "having his own studio in which he does photography in his

free time," and "he has been making videos on educating others on photography via YouTube and DTube.").

Upon being examined by Dr. Weinstein on December 3, 2020, Plaintiff was well-groomed, casually dressed, appeared stated age, had good eye contact, was cooperative and attentive, and was without psychomotor agitation or retardation.  AR at 1790.  Plaintiff's speech was clear, coherent, with normal rate and volume.  *Id*.  Mood was steady and "okay," affect was appropriate, full range, and congruent with mood.  *Id*. Plaintiff's thought process was organized, logical, and goal directed, and thought content was without current evidence of delusions or obsessions.  Despite reporting he experienced auditory hallucinations, Plaintiff denied current auditory or visual hallucinations.  *Id*.  Plaintiff's insight and judgment were fair, his memory and cognition were within normal limits, and Plaintiff denied suicidal and homicidal ideation.  *Id*.  Dr. Weinstein diagnosed bipolar I disorder.  *Id*.

Dr. Santarpia's psychiatric evaluation of Plaintiff on January 30, 2020, was unremarkable and Dr. Santarpia's medical source statement included that Plaintiff

> Presents as able to understand, remember, and apply simple as well as complex directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, co-workers, and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; regulate emotions, control behavior, and maintain well-being; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions within normal limits.

AR at 1481.

Dr. Santarpria continued that "[t]he results of the examination appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis."  *Id*.  Dr. Santarpia's

diagnoses included unspecified bipolar and related disorder by history, and opioid dependence abuse in sustained remission. *Id*. Significantly, the ALJ is permitted to rely on the opinion of a consultative examiner provided the opinion is supported by and consistent with other evidence in the record. *See Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) (the report of a consultative physician may constitute substantial evidence); *Hairston v. Comm'r of Soc. Sec.*, 2020 WL 516897, at *4 (W.D.N.Y. Jan. 29, 2020) ("It is well-established that '[a] well-supported opinion from a consultative examining physician, a non-examining state agency doctor, and/or a medical expert may . . . provide substantial evidence supporting an ALJ's decision.'" (quoting *Cassandra K. v. Comm'r* of Soc. Sec., 2019 WL 1115673, at *6 (N.D.N.Y. Mar. 11, 2019))), *aff'd sub nom. Hairston-Scott v. Comm'r of Soc. Sec.*, 2021 WL 3777581 (2d Cir. Aug. 26, 2021). Here, Dr. Santarpia's opinion is consistent with that of Dr. Weinstein, a psychiatrist. The ALJ's determination that Plaintiff's mental impairments did not pose more than a mild limitation in the four areas of functioning is thus supported by substantial evidence.

Furthermore, by limiting Plaintiff to unskilled work, the ALJ sufficiently accounted for Plaintiff's mild limitations to his mental functioning. *See Julia K. v. Comm'r of Soc. Sec.*, 2024 WL 3760344, at *6 (W.D.N.Y. Aug. 9, 2024) ("The ALJ's mild limitations in Plaintiff's mental functioning are consistent with an RFC limiting her to unskilled work." (citing *McIntyre v. Colvin*, 758 F.3d 146, 150–51 (2d Cir. 2014) (moderate limitation in maintaining concentration, persistence, or pace in relating with others did not preclude unskilled work); *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (affirming a finding of unskilled work where the evidence showed moderate or less severe limitations in her

work-related functioning); and *Calabrese v. Astrue*, 358 Fed.Appx. 274, 277 (2d Cir.

2009) (moderate limitations in different work-related areas did not preclude unskilled

work))).

Accordingly, the ALJ's determination that Plaintiff's mental health impairment is

not severe is supported by substantial evidence in the record, and the ALJ was not

required to incorporate into the RFC any limitation based on Plaintiff's mental

impairment.

### B.    Physical Impairment

Plaintiff argues the ALJ, in formulating Plaintiff's handling and fingering limitations

in the RFC, erroneously relied on stale evidence, specifically, Dr. Liu's opinion,

rendered on January 31, 2020 and prior to Plaintiff's CTR surgery on March 17, 2020.

Plaintiff's Memorandum at 9-12.  In opposition, Defendant argues the ALJ evaluated the

record as a whole, including the relevant opinion evidence, objective medical findings,

Plaintiff's testimony, and Plaintiff's activities of daily living.  Defendant's Memorandum at

9-10.

"Medical source opinions that are conclusory, stale, and based on an incomplete

medical record may not be substantial evidence to support an ALJ finding," *Lesanti v.

Comm'r of Soc. Sec.*, 2020 WL 500986, at *3 (W.D.N.Y. Jan. 30, 2020) (internal

brackets omitted), and a "medical opinion may be stale if it does not account for the

claimant's deteriorating condition."  *Id.*  Nevertheless, a medical opinion is not

necessarily rendered stale by subsequent treatment or surgery.  *See Camille*, 652 Fed.

Appx. at 28 n. 4 (noting no case or regulation "imposes an unqualified rule that a

medical opinion is superseded by additional material in the record"); *Robert B. v.*

*Kijakazi*, 2022 WL 1458601, at *3 (W.D.N.Y. May 9, 2022) ("Here, although the opinions in question were rendered up to one year before the first of plaintiff's surgeries, and two years and nine months prior to plaintiff's hearing, there is no evidence that plaintiff's condition deteriorated during that period.  As the ALJ noted, examination findings before and after plaintiff's surgeries did not show any significant change.").  In the instant case, there is substantial evidence in the record supporting both that Dr. Liu's opinion was not rendered "stale" by a deterioration in Plaintiff's hand impairment, and that in any event, the ALJ's formulation of Plaintiff's RFC with regard to his hand impairment is supported by substantial evidence in the record.

In particular, the ALJ also considered Plaintiff's treatment with Dr. Kalonaros, AR at 18 (referencing AR at 1566-1615), including that on January 15, 2019, Plaintiff underwent electrodiagnostic studies ("EMG") for neck pain radiating into the left upper extremity and down his arm resulting in constant tingling and numbness of the left shoulder and arm to the hand.  AR at 1583.  The EMG results showed that "[a] mild left median neuropathy, localized to the wrist was the only abnormality seen," and Dr. Kalonaros diagnosed radiculopathy, cervical region.  AR at 1584.  On January 16, 2019, Plaintiff was physically examined at Sheridan Drive Medical Group by physician's assistant Kari Ann Womer ("PA Womer"), who reported Plaintiff complained of paresthesias (tingling or numbness) in his left upper extremity, but that EMG was within normal limits and negative.  AR at 1578-82.

Although Dr. Liu's opinion was rendered prior to Plaintiff's CTR surgery on March 17, 2020, the ALJ observed that a presurgical examination at General Physicians, Orthopedics on March 16, 2020, *i.e.*, the day before the CTR surgery, showed no

abnormalities other than positive Tinel's of the wrist (tapping on elbow to elicit cubital tunnel syndrome response), but Dr. Paterson scheduled Plaintiff for bilateral carpal tunnel releases the next day.  AR at 18 (referencing AR at 1619-20, 1641-43, 1652-55). At a follow-up appointment with Dr. Paterson on June 12, 2020, following the CTR surgery, Plaintiff reported "numbness and tingling in left small and ring fingers which he was told was coming from his neck after EMG in past," "[p]reoperative numbness and tingling in the medial n[europathy]. distribution is resolved," and right wrist pain and swelling.  AR at 1648.  Upon Dr. Paterson's examination of Plaintiff's upper extremities, no obvious instabilities were observed and motor strength was intact, *id*. at 1649, some swelling of the right radial wrist was observed, and bilateral range of motion was full.  *Id*. at 1649-50.  Dr. Paterson assessed right wrist DeQuervain's tenosynovitis, and left cubital tunnel syndrome ("CuTS") (irritation of the ulnar (elbow) nerve producing a tingling sensation in the little and ring fingers), based on Plaintiff's report that an EMG showed a pinched nerve in his neck, but Dr. Paterson was unable to reproduce the CuTS by "Tinel's" (tapping on elbow to elicit CuTS response).  *Id*.

Dr. Paterson administered a right first dorsal injection, prescribed oral steroids and a wrist brace, rest, ice, and elevation, and Plaintiff was to modify activities as tolerated.  *Id*. at 1650.  At a further follow up on July 30, 2020, Plaintiff reported the wrist injection and oral steroids provided relief and improvement, but Plaintiff had tightness of the right radial hand, numbness of the right index finger and pain rated 4/10 of the radial wrist, and mild numbness of the left hand.  *Id*. at 1641.  Dr. Paterson discussed treatment options for right DeQuervain's tenosynovitis included surgical right first dorsal compartment release, or non-surgical treatment with cortisone injection, bracing, and

nonsteroidal anti-inflammatory drugs. *Id*. at 1642. Plaintiff chose the non-surgical option and was instructed to either follow up in six weeks or cancel if better, or call back sooner if Plaintiff decided to schedule surgery. *Id*. at 1642-43. There is no indication in the administrative record that Plaintiff sought further treatment for his right DeQuervain's tenosynovitis.

The ALJ also considered other evidence in the record supporting the ALJ's determination that Plaintiff, despite some hand impairments, retained the ability to frequently reach, handle, finger, and feel with both hands. In particular, on July 10, 2020, Plaintiff treated at Northtowns Medical Group with Dr. Gullickson who reported Plaintiff complained of "morning stiffness and pain in both hands" but there was "no obvious joint swelling or deformity," and arthritis was suspected. AR at 18 (referencing AR at 1630-77). At re-examinations at Dent on July 6, 2020, and October 14, 2020, by physician's assistant Janelle K. Young, PA-C, for dizziness and insomnia, Plaintiff was reported as having full strength in his upper and lower extremities, no tremor or abnormal movements, normal muscle tone with no atrophy or fasciculation (visible, involuntary twitching), and "fine motor coordination were intact and appropriate for age." AR at 1623-29, 1636-38.

The ALJ also properly considered Plaintiff's self-reported activities of daily living in formulating Plaintiff's RFC, including that Plaintiff was able to engage in most activities of daily living including childcare, AR at 20 (referencing AR at 1483-89), and engaged in hobbies including photography,and making YouTube videos instructing others in photography, collected income from rental properties, at times worked as an

Uber driver,[9] swam and worked out.  AR at 20 (referencing AR at 725-1233 (Horizon Health progress notes), 1686-1756 (Buffalo Methadone progress notes), and 1787-91 (Dr. Weinstein's opinion)).  The ALJ properly found these activities consistent with the performance of a reduced range of sedentary work with frequent handling and fingering. *See Alissa H. v. Comm'r of Soc. Sec.*, 2024 WL 1250228, at * 8 (W.D.N.Y. Mar. 25, 2024) (considering the plaintiff's activities of daily living, which included caring for children and making meals, not inconsistent with the ability to frequently handle, feel, and finger).

Accordingly, substantial evidence in the record supports the ALJ's determination that Plaintiff, despite his hand impairments, retained the ability to frequently reach, handle, finger, and feel.  Moreover, Plaintiff has failed to point to any evidence supporting a more restrictive RFC, as is his burden.  *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (observing it is the plaintiff's burden to establish an inability to engage in substantial gainful activity).

In sum, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  Here, under the court's "very deferential standard of review," *Brault*, 683 F.3d at 448, the plethora of evidence in the administrative record cited by the ALJ, including treatment notes, diagnostic test results, and medical opinions, establishes "that no reasonable factfinder could [not] have reached the same conclusion," *i.e.*, the ALJ's RFC assessment that Plaintiff, despite his impairments, remained capable of performing a sedentary work with

---

[9] The ALJ found the income Plaintiff derived from such work was not consistently above the threshold for SGA and there were long periods of time in which Plaintiff did not work.  AR at 12-13.

certain environmental limitations including no exposure to smoke, dust, or other respiratory irritants, and limiting Plaintiff to no more than frequent reaching, handling, fingering, and feeling.  *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  The ALJ's Decision is thus supported by substantial evidence in the record, requiring Plaintiff's Motion be DENIED and Defendant's Motion be GRANTED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is DENIED; Defendant's Motion (Dkt. 11) is GRANTED; the Clerk of Court is DIRECTED to CLOSE the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 20, 2024
            Buffalo, New York